# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| CHARLES HYDE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV419-091 |
| | ) | |
| CAPT. BOWMAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER**

Proceeding *pro se* and *in forma pauperis*, plaintiff Charles Franklin Hyde brought this 42 U.S.C. § 1983 Complaint relating to his arrest.  Doc. 1.  The Court granted plaintiff leave to proceed *in forma pauperis*, doc. 3, and plaintiff returned the necessary forms, doc. 12 and doc. 13.  The Court now screens the Complaint pursuant to 28 U.S.C. §1915A.[1]

---

[1] The Prison Litigation Reform Act of 1995 (PLRA), Pub. L. No. 104-134, 110 Stat. 1321-71, sets forth procedures governing the filing of complaints in federal court by prisoners and other detainees.  In cases seeking redress from a government entity or its officials, the PLRA requires a preliminary screening in order to "identify cognizable complaints" and to dismiss, prior to service, any complaint that is "frivolous, malicious, or fails to state a claim upon which relief may be granted" or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A.

The Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278–79 (11th Cir. 2001).  In doing so, allegations in plaintiff's Complaint are taken as true and construed in the light most favorable to him.  *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011).  Conclusory allegations alone, however, are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

Plaintiff's complaint makes vague allegations about injuries he sustained when he was arrested (it's unclear). Doc. 1 at 5 ("I was shot – by over aggressive police – invasion I'm hurt, and during the injury and illegal process of no-one wants to hear it I'm losing everything!"). He also seems to dispute whether his complaints are being properly responded to, although it is unclear whether this relates to his relationship with his attorney or with the jail. *Id.* Finally, he also seeks to sue a doctor at a Savannah hospital for medical malpractice related to injuries he sustained after being shot.

Generally, the Court liberally construes *pro se* plaintiffs' complaints. However, the mishmash of details provided by plaintiff along with the numerous conclusory allegations and almost no series of cognizable facts makes it virtually impossible to determine the proper vehicle for plaintiff's complaint. The Court can discern two *potential* claims. The first for excessive use of force during his arrest, and the second for medical malpractice.

Section 1983, which provides a mechanism for bringing a civil action for the deprivation of a right or privilege by a *state actor*, does not cover medical malpractice. 28 U.S.C. § 1983. A private party may only be deemed a state actor for §1983 purposes if he (1) performed a public function; (2) was coerced or

---

(2009) (discussing a Rule 12(b)(6) dismissal).

encouraged by the government; or (3) was interdependent with the government and participated in a joint action. *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). Defendant here appears to be a private hospital and not a proper defendant under § 1983. *See Watson v. Mem. Health Univ. Medical Ctr.*, 2006 WL 3408216, at *1, n. 1 (S.D. Ga. Sept. 18, 2006) (suggesting a § 1983 against defendant Memorial Health Medical Center was "legally insufficient" when plaintiff failed to allege that it acted under color of state law or in concert with any state official). Here plaintiff does not allege that any defendant involved in his hospital treatment was affiliated with the state or meets the otherwise high threshold for a private party to be held liable under § 1983. Accordingly, his claim for "medical malpractice" to the extent he seeks to proceed under § 1983 against the hospital and its employees should be dismissed.

Finally, his (potential) claim for excessive force also fails. To allege excessive force by an officer in the course of executing an arrest, a plaintiff must assert that the officer's conduct was objectively "unreasonable." *Graham v. Connor*, 490 U.S. 386, 395-97 (1989). Such a test looks not to the motivation of the particular officer, but instead examines whether a reasonable officer would have taken the same action. *Id*. at 397. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment

3

requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (quotes and cites omitted).

> Because "[t]he test of reasonableness under the Fourth Amendment is not capable of a precise definition or mechanical application," . . . its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id.* The Court examines "the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balanc[ing] the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." *McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009) (*citing Scott v. Harris*, 550 U.S. 372, 383 (2007)). "Although some amount of force is generally needed to subdue a suspect, the amount used must be reasonably proportionate to the need for force." *Smith v. LePage*, 834 F.3d 1285, 1294 (11th Cir. 2016); *see also Scott*, 550 U.S. at 383 (observing that in determining whether the Fourth Amendment was violated, "we must still slosh our way through the factbound morass of 'reasonableness.'"). However, for the Court to do its duty and slosh through the factbound morass, there must be some facts alleged. All that is discernable from

4

plaintiff's complaint is that he was shot—probably (although it is unclear) during the course of an arrest. The Court isn't even entirely certain which officer shot plaintiff. In short, plaintiff needs to replead and clearly explain what happened to him and who caused his injuries.

Because of these defects, his suit would generally be dismissed. However, a *pro se* plaintiff is typically granted at least one opportunity to amend. *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015) (*citing Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 & n. 1 (11th Cir. 2002) (en banc)) ("When a more carefully drafted complaint might state a claim, a district court should give a pro se plaintiff at least one chance to amend the complaint before the court dismisses the action."); *see also* Fed. R. Civ. P. 15(a)(2)(courts should grant leave to amend "freely . . . when justice so requires"). That's the case here. Failure to amend may result in a recommendation of dismissal.

## CONCLUSION

For the foregoing reasons, plaintiff is **DIRECTED** to file an amended complaint within **thirty days** from the date of this Order. Meanwhile, it is time for plaintiff to pay his filing fee. His PLRA paperwork reflects $0 in average monthly deposits and a $0 average reserved monthly balance over the three-month period prior to the date of his Prison Account Statement. Doc. 7. He,

therefore, owes no initial partial filing fee. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). However, Plaintiff's custodian (or designee) shall set aside 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full. In the event that plaintiff is transferred to another facility, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to his new custodian. The balance due from plaintiff shall be collected by the custodian at all future facilities in accordance with the terms of this Order. A copy of this Order and of the Consent to Collection of Fees form Trust Account shall be served upon plaintiff and his current custodian. The payment portion of this Order is to be implemented immediately, as it is not subject to the adoption provision of Fed. R. Civ. P. 72(b).

**SO ORDERED,** this 9th day of November, 2020.

*/s/ Christopher L. Ray*
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA