UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| CHARLES FRANKLIN HYDE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LONNIE BOWMAN, *et al.*, )<br>)<br>Defendants. ) | CV419-091 |

### REPORT AND RECOMMENDATION

Proceeding *pro se* and *in forma pauperis*, Plaintiff Charles Franklin Hyde brought this 42 U.S.C. § 1983 action alleging he was subjected to excessive force during an arrest. *See* doc. 1 (Complaint). The Court screened his Complaint and required him to amend it. Doc. 15. He complied, docs. 18 & 19, and the Court screened his amended pleadings and approved his excessive force claim for service on defendants Shawn Fields, Lonnie Bowman, and Unknown Drug Task Force Officers. Doc. 30 at 7-8.

Because the record in Hyde's criminal prosecution in this District, including his own trial testimony, called into question his representations in this case, *United States v. Hyde*, CR219-005, doc. 416

1

(S.D. Ga. June 3, 2021) (Minute Entry for Day 3 of trial), the Court directed him to show cause why he did not violate Fed. R. Civ. P. 11(b)(3) when he made the representations. Doc. 71 at 4-5. After Hyde responded, doc. 72, the Court sanctioned Hyde under Fed. R. Civ. P. 11(c)(1) by striking Hyde's pleadings from the record. Doc. 74 at 8. The Court, however, afforded Hyde an opportunity to file a "*single* Amended Complaint" compliant with Rule 11. *Id.* (emphasis added) (noting that the Amended Complaint will "supersede all previously-filed complaints."). The Court explained that "[a]fter Hyde files his Amended Complaint, the Court will screen it pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and § 1915A." *Id.* at 9.

Despite the Court's clear direction to file a "single" Amended Complaint, doc. 74 at 8, Hyde filed an Amended Complaint, doc. 76, and a second filing in which he asks the Court to "[p]lease add this to my Complaint . . . to complete the necessary completion [sic] [.]" Doc. 77 at 6. The Court proceeds to screen both submissions pursuant to 28 U.S.C. § 1915A.[1] For the following reasons, the Court **RECOMMENDS** that

---

[1] The Prison Litigation Reform Act of 1995 (PLRA), Pub. L. No. 104-134, 110 Stat. 1321-71, sets forth procedures governing the filing of complaints in federal court by prisoners and other detainees. In cases seeking redress from a government entity or its officials, the PLRA requires a preliminary screening in order to "identify

2

Hyde's Amended Complaint as supplemented, docs. 76 & 77, be **DISMISSED**.

## BACKGROUND

Hyde seeks damages for injuries he suffered when law enforcement officers raided his home to search for drugs. *See, e.g.*, doc. 76 at 1; doc. 77 at 2-3. After he was awakened by the sound of barking dogs and breaking glass, a "flash [b]ang in [the] hallway [blew] up in front of [him.]" Doc. 76 at 1. The officers "made no announcements" before entering his home; however, after they entered his home, they announced "Sheriff's Dep[artment]" once. *Id.*

At some point after the officers' entry, they were in the living room, and Hyde was in the hallway leaning against a doorframe and "stunned from [the] flash bang." Doc. 76 at 1. He notes that he could not see any officers because the only light turned on in the home was in the hallway.

---

cognizable complaints" and to dismiss, prior to service, any complaint that is "frivolous, malicious, or fails to state a claim upon which relief may be granted" or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A.
　　The Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278–79 (11th Cir. 2001). In doing so, allegations in Hyde's Complaint are taken as true and construed in the light most favorable to him. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations alone, however, are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal).

*Id.* at 2. Defendant Captain Bowman subsequently shot him in the hand. *Id.*; *see also* doc. 77 at 4 ("Boom[.] Capt. B. shoots Hyde inflicting substantial injury to [h]and.").

Hyde's Amended Complaint, as supplemented, indicates that he had a gun on his person before Bowman shot him. *See, e.g.*, doc. 76 at 1, 3-5. Hyde asserts that Bowman admitted (presumably at Hyde's criminal trial) that he heard Hyde's gun "clack" but did not actually see the gun. Doc. 76 at 3 (alleging that Bowman "hear[d] a gun clack knowing what that sound was"). Hyde explains that the "clack[ing]" noise resulted from Hyde "showing officers [the] gun doesn't shoot." *Id.*[2] Hyde maintains that he never pointed the gun at an officer, and that he never threatened or resisted officers in any way. *See, e.g., id.* at 3, 5. He alleges that officers did not provide any warnings after their initial

---

[2] *See also* doc. 76 at 3 ("Bowman admitted to hearing Hyde show officers gun doesn't shoot. (Not seeing Hyde) squeezing a trigger (not seeing Hyde)—but hearing a gun clack knowing what that sound was. [sic]" *Id.* at 3 (cleaned up) (emphasis in original); doc. 76 at 4 ("Bowman tried to be a hero? (speculation, it[']s better than officers['] story!) Bowman snuck up to hallway across from living room. Seen [Hyde] standing there [illegible] and tried to shoot gun out of hand (side shot)? That fits a lot better than officers['] version (e.g., pointing a gun at Capt.'s head squeezing a trigger. That story stinks.") (cleaned up) (emphasis in original); *id.* at 5 ("[Bowman] admitted shooting & admitted "hearing" Hyde showing gun don't shoot. . . . Hearing is not seeing[,] hearing is not pointing[.]") (cleaned up) (emphasis in original); *id.* (citing evidence purportedly "support[ing] Hyde's allegation [that] Bowman snuck-up and shot Hyde[.]") (cleaned up).

"Sheriff's Dep[artment]" announcement, *see, e.g., id.* at 1, 6, and that he was "waiting for officers to say <u>something</u>" before Bowman shot him. Doc. 77 at 5 (emphasis in original). After Bowman shot Hyde, an officer asked "where is the gun?"; Hyde responded "It's on the floor (here in bedroom)." Doc. 76 at 1.[3]

Hyde alleges that the officers arrested him after Bowman shot his hand, and that he complied with their instructions. *See, e.g.,* doc. 76 at 1-2; doc. 77 at 5. They "jump[ed] on [him]", placed a "knee in [his] neck and a boot standing on [the] side of [his] face[.]" Doc. 76 at 2 (cleaned up). They "humiliat[ed]" him by "stripp[ing] [him] naked" and "parad[ing] him out in front of all the neighbors to see." *Id.* Hyde alleges that Bowman "tamper[ed] with evidence" by "leaving the scene[.]" Doc. 76 at 5; *see also id.* at 6 ("Bowman had another officer drive him away

---

[3] The Court is unable to discern the meaning of the following assertion in Hyde's second filing: "Bowman arrogance that he should be believed . . . 'Hurry shoot Hyde's not going anywhere,' Hyde's already seized! [sic]" Doc. 77 at 2. The Court charitably presumes that this assertion is Hyde's speculation regarding Bowman's thoughts in the moments before he shot Hyde. Otherwise, the assertion directly contradicts Hyde's' allegation that "no one said nothing before Bowman shot." Doc. 76 at 6; doc. 77 at 5 ("Hyde was waiting for the officers to say <u>something</u> —complete silence when Hyde was shot!" (cleaned up)); *see also* doc. 74 at 7 (explaining to Hyde that violations of Fed. R. Civ. P. 11(b) can result in dismissal). To the extent this assertion constitutes speculation about Bowman's state of mind, facts offered in support of the claims must rise to a level greater than mere speculation. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[without] any interview[.]"). He alleges that "Capt. Ashdown" failed to intervene in the shooting, citing Ashdown's testimony that he "said nothing" before Bowman shot Hyde. *Id.* at 5-6. Hyde alleges that Shawn Fields was the "affiant in charge, helping stage the scene to cover for all officers['] errors." *Id.* at 7. He alleges that "Major Hein [threw the] flash [bang] [without] clearing" the area. *Id.* at 7; *see also* doc. 77 at 4.

## ANALYSIS

**I.     Hyde's excessive force claim against Bowman based on the shooting should be dismissed.**

The focus of Hyde's Amended Complaint, as supplemented, appears to be an excessive force claim against Bowman. The Fourth Amendment protects against objectively unreasonable searches and seizures by the government. *Graham v. Connor*, 490 U.S. 386, 391-92 (1989). "Apprehension by deadly force constitutes a seizure." *Wilson v. Parker*, 746 F. App'x 860, 863 (11th Cir. 2018). To allege excessive force by an officer in the course of executing an arrest, a plaintiff must assert that the officer's conduct was objectively unreasonable. *Graham*, 490 U.S. at 395-97; *see also Scott v. Harris*, 550 U.S. 372, 383 (2007) (observing that in determining whether the Fourth Amendment was violated, "we must still slosh our way through the factbound morass of 'reasonableness.' ").

6

Courts analyzing the reasonableness of the use of deadly force consider:

> whether the officer who used deadly force: (1) had 'probable cause to believe that the suspect pose[d] a threat of serious physical harm, either to the officer or to others,' or that the suspect had 'committed a crime involving the infliction or threatened infliction of serious physical harm[;]' (2) reasonably believed that the use of deadly force was 'necessary to prevent escape[;]' and (3) had given some warning about the possible use of deadly force, if feasible.

*Robinson v. Sauls*, 46 F.4th 1332, 1343 (11th Cir. 2022) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985)). The Court examines "the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance[s] the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." *McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009) (citing *Scott*, 550 U.S. at 383).

Taking as true the allegations in the Complaint, as supplemented, and construing them in the light most favorable to Hyde, *Bumpus*, 448 F. App'x at 4 n.1, Bowman did not act objectively unreasonably when he used deadly force against Hyde. Hyde alleges that Bowman was searching for drugs during a raid in Hyde's home, and the only space with a light on in the home was a hallway. Doc. 76 at 1-2. He acknowledges

7

that *after* the officers announced that they were members of the sheriff's department, Bowman not only knew that Hyde had a gun in the hallway, but that the gun made a "clack[ing]" sound. *Id.* at 3 ("Bowman [knew] what that sound was."). "While the 'mere presence of a gun . . . is not enough to warrant the exercise of deadly force and shield an officer from suit, [Cit.], when a suspect's gun is 'available for ready use' — even when the suspect has not 'drawn his gun' — an officer is 'not required to wait and hope for the best[.]' " *Powell v. Snook*, 25 F.4th 912, 922 (11th Cir. 2022) (quoting *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010)). Hyde's Amended Complaint describes a "tense, uncertain and rapidly evolving" situation, *Graham*, 490 U.S. at 397, where Hyde himself alleges that Bowman believed that Hyde was manipulating a gun. Under these circumstances, taking all of Hydes' factual allegations as true and drawing all inferences in his favor, Bowman had probable cause to believe that his life or the lives of other officers were in danger, and his use of deadly force was not objectively unreasonable.[4]

---

[4] *See, e.g.*, *Howe v. City of Enterprise*, 2018 WL 8545947, at *24, 26 (M.D. Ala. Sept. 17, 2018) (Plaintiff fails to state an excessive force claim by alleging that an officer shot him when the officer knew that a domestic disturbance was committed in a home, the plaintiff answered the door with a gun, and the plaintiff "immediately turned to retreat back into the house"); *Martinez v. Halabi*, 2012 WL 222069, at *4 (S.D. Fla. Jan. 25, 2012) (granting officers' summary judgment motion regarding

Hyde repeatedly asserts that he did not point the gun at officers before Bowman shot his hand.[5] Courts, however, are "unwilling to hold that . . . officers were unreasonable in not waiting to see if [the] plaintiff would raise the gun in their direction." *Howe*, 2018 WL 8545947, at *24; *see also Powell*, 25 F.4th at 922 ("The law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect." (quotations and citation omitted)). Additionally, Hyde's adamant assertions that he did not intend to threaten the officers[6] are irrelevant, since "[t]he only perspective that counts is that of a reasonable officer on the scene at the time the events unfolded." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166

---

excessive force claim when there was no dispute that that officers shot a suspect after knowing the suspect was armed in a warehouse, officers had reason to believe the suspect was dangerous, and the suspect "move[d] his hands in the direction of where his weapon was located" after officers entered the room and announced their presence); *Ermini v. Scott*, 249 F. Supp. 3d 1253, 1269-70 (M.D. Fla. 2017) (granting officers' summary judgment motion regarding excessive force claim when "[i]t is undisputed that [the suspect] told the officers she had a gun, told the deputies to leave the house, and had gotten out of bed and advanced towards the bedroom door where the deputies were standing" before an officer shot her).

[5] *See, e.g.*, doc. 76 at 3 ("Officers are behind walls in another room covered with a curtain at entrance. How can Hyde threaten or point a gun at Capt.'s head? Hyde didn't and couldn't.") (cleaned up); *id.* at 6 ("Hyde never pointed a gun at Bowman[.]").

[6] *See, e.g.*, doc. 76 at 3 ("Hyde never threatened[,] never resisted, never seen any officers till after Bowman shot Hyde."); *id.* (Hyde never seen anyone (officers) to threaten (posture) Hyde was frozen, stunned, not moving to listen for communication.").

(11th Cir. 2009). Even if Hyde did not intend to threaten the officers, and even if the "clack[ing]" sound resulted from Hyde merely "showing [the] officers [the] gun doesn't shoot", doc. 76 at 3, "the Court 'must see the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction in circumstances where inaction could prove fatal.'" *Young v. Borders*, 2014 WL 11444072, at *14 (M.D. Fla. Sept. 18, 2014) (quoting *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1334 (11th Cir. 2004)). Accordingly, a reasonable officer in Bowman's position would have probable cause to believe that officers' lives were in danger based on Hyde's allegations.

Hyde also asserts that the only verbal announcement the officers made before Bowman shot him was "Sheriff's Dep[artment]", and that he did not receive any warning before Bowman shot him. *See, e.g.*, doc. 76 at 1; doc. 77 at 4. The Eleventh Circuit, however, "has 'declined to fashion an inflexible rule that, in order to avoid civil liability, an officer must always warn his suspect before firing—particularly where such a warning might easily have cost the officer his life.'" *Cook v. Cobb Cnty., Georgia*, 2022 WL 3758235, at *6 (N.D. Ga. Aug. 29, 2022) (quoting

*Powell*, 25 F.4th at 922). For all Bowman knew, "the hesitation involved in giving a warning" after he heard Hyde's gun "clack" in the hallway during the raid "could readily cause such a warning to be his last." *Carr v. Tatangelo*, 338 F.3d 1259, 1269 n.19 (11th Cir. 2003) (quoting *McLenagan v. Karnes*, 27 F.3d 1002, 1007 (4th Cir. 1994)). Since the allegations in Hyde's amended pleadings indicate that Bowman was not unreasonable when he shot Hyde, those pleadings fail to state an excessive force claim against Bowman. It is **RECOMMENDED** that that claim be **DISMISSED**. Docs. 76 & 77.

## II. Hyde's excessive force claim based on the manner of his arrest after the shooting should be dismissed.

Hyde alleges that despite his compliance during his arrest, officers "jump[ed] on [him]", and officer placed a "knee in [his] neck", and a boot standing on [the] side of [his] face." Doc. 76 at 2. In his second filing, he alleges that he was "kick[ed] in the side to roll[ ]over[.]" Doc. 77 at 5. He alleges that the officers had their guns pointed at him during the arrest. *Id.*

The Eleventh Circuit has explained that:

> In an excessive force case arising out of an arrest, whether a constitutional violation occurred is governed by the Fourth Amendment's "objective reasonableness" standard. *Brosseau v. Haugen*, 543 U.S. 194, 197 . . . (2004) . . . . A genuine "excessive force" claim relates to the manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest. *Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006). Our cases identify several factors instructive in determining whether an officer's use of force was objectively reasonable, including "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically." *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000).

*Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). "[E]xcessive force is judged solely on an objective basis." *Id.* at 1330 (citing, *inter alia.*, *Graham*, 490 U.S. at 399).

Hyde's allegation that officers applied pressure to his neck and head during the arrest is insufficient to state an excessive force claim. *See, e.g.*, doc. 77 at 5. Courts have held that the application of pressure to a suspect's neck may be unreasonable when a "detainee [is] already restrained on the ground and . . . not struggling or resisting[.]" *Bruck v. Petry*, 2022 WL 2109187, at *8 (E.D. Ky. June 10, 2022) (citing *Laury v. Rodriguez*, 659 F. App'x 837, 845-46 (6th Cir. 2016)). The Eleventh

Circuit, however, has recognized that applying pressure to a suspect's neck or back does not necessarily constitute excessive force. *See, e.g.*, *Mongeau v. Jacksonville Sheriff's Off.*, 197 F. App'x 847, 851 (11th Cir. 2006) (Officer's "placement of his knee on Mongeau's back [and neck] to subdue him was objectively reasonable given Mongeau's previous resistance and risk of flight."). As one court in this Circuit explained, "[s]lamming a suspect to the ground and putting knees into the suspect's back are reasonable steps to take to secure an arrest[.] . . . This is especially true when the officer confronts a situation that might be dangerous or where the officer believes the suspects might flee." *Dukes v. Miami-Dade Cnty.*, 2007 WL 2696775, at *6 (S.D. Fla. Sept. 11, 2007) (citing *Gold v. City of Miami*, 121 F.3d 1442, 1446-47 (11th Cir. 1997)).

Hyde's terse allegation that the officers applied the pressure to his neck and head, *see e.g.*, doc. 77 at 5, does not indicate that the application was disproportionate to the need to subdue him. His allegations support the alternative conclusion: Hyde possessed a gun that "clack[ed]" during a drug raid in his dark home, *see, e.g.*, doc. 76 at 3, and the officers did not know the location of Hyde's gun after the shooting. *See, e.g.*, *id*. at 1. The Amended Complaint, as supplemented, describes a "situation that

13

might be dangerous" to the officers. *Dukes*, 2007 WL 2696775, at *6.[7] Hyde has not alleged any facts suggesting that officers applied the pressure unreasonably, and his conclusory allegation that the arrest "hurt[ ] . . . more than the bullet did", doc. 77 at 5, does not clarify the "extent of the injury inflicted." *Hadley*, 526 F.3d at 1329. Similarly, Hyde's single allegation that officers kicked him to roll him over is insufficient to show that officers acted unreasonably. *See* doc. 77 at 5; *see also Adedeji v. Hoder*, 935 F. Supp. 2d 557, 569 (E.D.N.Y. 2013) ("Indeed, where officers have confronted situations involving violent criminal activity . . . courts have found various shoves, pushes and other rough handling objectively reasonable.").

The Amended Complaints also show that the officers pointing their guns at Hyde was objectively reasonable. Docs. 76 & 77. At least one officer knew that Hyde's gun "clack[ed]" during the raid, and at some point after the shooting while officers were arresting Hyde, they did not know the gun's location. *See, e.g.*, doc. 76 at 1-3. Under those

---

[7] Hyde alleges that he "compliantly [did] exactly as [he was] told" during the arrest. Doc. 77 at 5. As discussed, however, "excessive force is judged solely on an objective basis." *Hadley*, 526 F.3d at 1330. Reasonable officers would have feared for their lives given the facts in the Amended Complaints, and Hyde has not alleged facts sufficient to show that the application of pressure to his neck and head was unreasonable.

14

circumstances, the officers' decision to draw their guns until they could be assured that Hyde did not pose a threat was not excessive. *Cf., e.g.*, *Wright v. E. Point Police Dep't*, 2013 WL 510625, at *3-4 (N.D. Ga. Jan. 11, 2013) (officer's drawing gun to arrest "a suspicious person [allegedly] involved in an attempted armed robbery . . . was not excessive . . . ."). *Cf. Baird v. Renberger*, 576 F.3d 340, 346-47 (7th Cir. 2009) ("[C]ourts do not find constitutional violations for gun pointing when there is a reasonable threat of danger or violence to police.").

### III. To the extent Hyde asserts a claim that he was subjected to an unreasonable strip search, that claim should be dismissed.

Hyde alleges that officers "strip[ed] [him] . . . naked", and that he was "humiliat[ed]" when officers "parad[ed] him out in front of all the neighbors[.]" Doc. 77 at 5. To the extent Hyde asserts a claim that he was subjected to an unreasonable strip search, that claim should be **DISMISSED**. Docs. 76 & 77.

"[T]he underlying command of the Fourth Amendment is always that searches . . . be reasonable," and "what is reasonable depends on the context within which a search takes place." *New Jersey v. T. L. O.*, 469 U.S. 325, 337 (1985). " '[T]he law governing [strip] searches is far from

15

settled; the rules alter with circumstances, and the circumstances are myriad.'" *Morris v. Krouse*, 2020 WL 3972539, at *5 (S.D. Ga. July 14, 2020) (quoting *Gonzalez v. City of Schenectady*, 728 F.3d 149, 158 (2d Cir. 2013)). "The Eleventh Circuit, in an en banc decision, stated that for a post-arrest strip/body cavity search, the law enforcement officer must have 'at least a reasonable suspicion' that the person to be searched possesses contraband and that the contraband is reasonably suspected to be located in the area to be searched." *Richardson v. Quitman Cnty., Ga.*, 912 F. Supp. 2d 1354, 1374 (M.D. Ga. 2012) (quoting *Evans v. Stephens*, 407 F.3d 1272, 1279–80 (11th Cir. 2005)). Courts have also recognized that strip searches may be appropriate "if there is reasonable suspicion that the arrestee is concealing weapons[.]" *King v. Schieferdecker*, 2011 WL 2636826, at *5 (C.D. Ill. July 6, 2011) (citing *Campbell v. Miller*, 499 F.3d 711, 717 (7th Cir. 2007)).

Hyde has not alleged facts sufficient to show that the strip search was "unreasonable" by merely alleging that it occurred and that he was humiliated by it, especially given his allegations that officers were raiding his home to search for drugs, and that they could not locate Hyde's gun after Bowman shot him. *See, e.g.*, doc. 76 at 1-3. Accordingly,

to the extent Hyde asserts a claim that he was unreasonably searched, that claim should be **DISMISSED**. Docs. 76 & 77.

### IV. The remaining conclusory claims in Hyde's Amended Complaints should be dismissed.

Hyde raises several vague complaints regarding officers' handling of evidence after the shooting. He alleges that Bowman "tamper[ed] with evidence" by "leaving the scene", doc. 76 at 5, and that "another officer [drove] him [presumably Bowman] away [without] any interview[.]" *Id.* at 6. In a similarly conclusory sentence, Hyde asserts that Shawn Fields was the "affiant in charge, helping stage the scene to cover for all officers['] errors." Doc. 76 at 7. Absent any specific allegations clarifying how these officials violated Hyde's constitutional rights, these claims should be **DISMISSED**. Docs. 76 & 77. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, at 678 ("Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.' " (citations and alterations omitted)).

Hyde's allegations regarding "Capt. Ashdown" are also unclear:

> Capt. Ashdown (failed to intervene) Bowman's backup testified to not saying "nothing." So, if Ashdown said nothing[,] that means all officers behind said nothing!! Which supports Hyde[']s allegation of Bowman snuck-up and shot Hyde[.] Never even Hyde a chance not to be shot!

17

Doc. 76 at 5 (cleaned up). Since Hyde does not allege any specific facts suggesting that Ashdown's failure to "say[ ] [something]" and "intervene" before Bowman shot Hyde constitutes a constitutional violation, Hyde's claim against Ashdown should be **DISMISSED**. Docs. 76 & 77. To the extent he raises this vague claim against "all officers behind", that claim should also be **DISMISSED**. Docs. 76 & 77.

Hyde tersely alleges that "Major Hein [threw the] flash [bang] [without] clearing" the area. Doc. 76 at 7; *see also* doc. 77 at 4. "The use of a flash-bang device in the execution of the search warrant does not necessarily constitute excessive force." *Despain v. Louisville Metro. Gov't*, 2021 WL 3699425, at *9 (W.D. Ky. Aug. 19, 2021) (citing *Ramage v. Louisville/Jefferson County Metro Gov't*, 520 F. App'x 341, 347 (6th Cir. 2013)). Since none of the allegations in Hyde's Amended Complaints suggest that Hein's use of the flash bang without "clear[ing] [the] area", doc. 77 at 4, was unreasonable, this claim should be **DISMISSED**. Docs. 76 & 77.

## CONCLUSION

For the foregoing reasons, all of Hyde's claims should be **DISMISSED**. Docs. 76 & 77.[8]  This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and

---

[8] Typically, when a *pro se* plaintiff's complaint fails to state a claim upon which relief may be granted, the plaintiff is granted at least one opportunity to amend. *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015) (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 & n.1 (11th Cir. 2002) (en banc)) ("[W]hen a more carefully drafted complaint might state a claim, a district court should give a pro se plaintiff at least one chance to amend the complaint before the court dismisses the action."); *see also* Fed. R. Civ. P. 15(a)(2) (courts should grant leave to amend "freely . . . when justice so requires").  Hyde's most-recently-filed Amended Complaints, docs. 76 & 77, however, are his fourth and fifth complaints in this case.  *See also* docs. 1, 18 & 19.  Since Hyde has had numerous opportunities to adequately state a claim, the Court declines to grant him another opportunity to amend.

recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 28th day of November, 2022.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA