IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| CHARLES FRANKLIN HYDE,<br><br>    Plaintiff,<br><br>v.<br><br>BOWMAN, et al..<br><br>    Defendants. | CIVIL ACTION NO.: 4:19-cv-91 |

## O R D E R

Before the Court is the Magistrate Judge's Report and Recommendation ("R&R") that Plaintiff Charles Franklin Hyde's Amended Complaint, as supplemented, (docs. 76 & 77), be dismissed in its entirety, (doc. 78), to which Hyde has filed objections, (doc. 81). For the following reasons, after a careful *de novo* review of the entire record, the Court **ADOPTS** the R&R as its opinion, Hyde's objections are **OVERRULED**, and his claims are **DISMISSED**.

## BACKGROUND

As the Magistrate Judge explained, Hyde seeks damages for injuries he suffered when law enforcement officers raided his home to search for drugs. (See doc. 78, pp. 3-4 (citing, *inter alia*, doc. 76 p. 1; doc. 77 pp. 2-3).) After he was awakened by the sound of barking dogs and breaking glass, a "flash [b]ang in [the] hallway [blew] up in front of [him.]" (Doc. 76, p. 1.) The officers "made no announcements" before entering his home; however, after they entered his home, they announced "Sheriff's Dep[artment.]" (Id.) After the officers' entry, Hyde was leaning against a doorframe in a hallway and "stunned from [the] flash bang." (Id.) Defendant Bowman subsequently shot Hyde in the hand. (Id.; see also doc. 77, p. 4 ("Boom[.] Capt. B. shoots Hyde inflicting substantial injury to [h]and.").)

Hyde had a gun on his person before Bowman shot him.  (See, e.g., doc. 76, pp. 1-5). Hyde asserts that Bowman "admitted" (presumably at Hyde's criminal trial) that he heard Hyde's gun "clack" but did not actually see the gun.  (Id., p. 3 (alleging that Bowman "hear[d] a gun clack knowing what that sound was").)  Hyde explains that the "clack[ing]" noise resulted from Hyde "showing officers [the] gun doesn't shoot."  Id.  Hyde alleges that he did not point the gun at officers, and that he maintained a "nonviolent" posture before the shooting.  (Id., pp. 3, 6.)  He alleges that the officers made no announcements other than their initial "Sheriff's Dep[artment]" announcement before Bowman shot him.  (See, e.g., id. pp. 1, 6.)  After Bowman shot Hyde, an officer asked "where is the gun?"; Hyde responded "It's on the floor (here in bedroom)."  (Id., p. 1.)  Hyde also alleges that officers used excessive force during his subsequent arrest, (id., p. 2), officers subjected him to a strip search, (id.), Bowman and "Shawn Fields" tampered with evidence, (id, pp. 5-6), "Capt. Ashdown" failed to intervene and stop the shooting, (id., pp. 5-6), and "Major Hein [threw the] flash [bang] [without] clearing" the area, (id., p. 7).  The Magistrate Judge recommends that the Court dismiss all of Hyde's claims for failure to state a claim. (Doc. 78, p. 19.)

## DISCUSSION

I. **The Court adopts the Magistrate Judge's recommendations to which Hyde does not object.**

Hyde's objections to the R&R only address the Magistrate Judge's recommendation that his excessive force claim against Bowman be dismissed; he does not object to the other recommendations.  (See generally doc. 81).  After a careful de novo review of the record, the Court concurs with the Magistrate Judge's unobjected-to recommendations, and **ADOPTS** them as its opinion.  For the reasons discussed by the Magistrate Judge, all of Hyde's claims distinct from the excessive force claim against Bowman are **DISMISSED**.

**II.     The Court adopts the Magistrate Judge's recommendation that Hyde's excessive force claim against Bowman be dismissed.**

Hyde objects to the Magistrate Judge's recommendation that his excessive force claims against Bowman be dismissed. (See generally doc. 81.) The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. This guarantee includes the "plain right to be free from the use of excessive force in the course of an arrest." Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002). As such, "*all* claims that law enforcement officers have used excessive force" are subject to "the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395 (1989) (emphasis in original). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Morton v. Kirkwood, 707 F.3d 1276, 1281 (11th Cir. 2013) (quoting Graham, 490 U.S. at 396). In doing so, courts must ask whether the force applied was "objectively reasonable in light of the facts confronting the officer." Crenshaw v. Lister, 556 F.3d 1283, 1290 (11th Cir. 2009) (per curiam) (quoting Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002)).

"Apprehension by deadly force constitutes a seizure." Wilson v. Parker, 746 F. App'x 860, 863 (11th Cir. 2018). Courts analyzing the reasonableness of the use of deadly force consider:

> whether the officer who used deadly force: (1) had 'probable cause to believe that the suspect pose[d] a threat of serious physical harm, either to the officer or to others,' or that the suspect had 'committed a crime involving the infliction or threatened infliction of serious physical harm[;]' (2) reasonably believed that the use of deadly force was 'necessary to prevent escape[;]' and (3) had given some warning about the possible use of deadly force, if feasible.

3

Robinson v. Sauls, 46 F.4th 1332, 1343 (11th Cir. 2022) (quoting Tennessee v. Garner, 471 U.S. 1, 11-12 (1985)).

The Magistrate Judge concluded that, based on the allegations in Hyde's Amended Complaint, as supplemented, Bowman acted objectively reasonably when he used deadly force against Hyde. Doc. 78 at 7. He explained:

> Hyde alleges that Bowman was searching for drugs during a raid in Hyde's home, and the only space with a light on in the home was a hallway. [Cit.] He acknowledges that *after* the officers announced that they were members of the sheriff's department, Bowman not only knew that Hyde had a gun in the hallway, but that the gun made a "clack[ing]" sound. [Cit.] . . . Hyde's Amended Complaint describes a 'tense, uncertain and rapidly evolving' situation, [cit.] where Hyde himself alleges that Bowman believed that Hyde was manipulating a gun. Under these circumstances, taking all of Hydes' factual allegations as true and drawing all inferences in his favor, Bowman had probable cause to believe that his life or the lives of other officers were in danger, and his use of deadly force was not objectively unreasonable.

(Doc. 78, pp. 7-8 (citations omitted).)

In his objections, Hyde reiterates that Bowman's use of deadly force was unreasonable because Hyde maintained a non-violent posture before the shooting, and did not threaten or point his gun at any officer.[1] The Court, however, must decide whether Bowman's use of deadly force was "objectively reasonable in light of the *facts confronting* [*him*]" based on the allegations in Hyde's Amended Complaint, as supplemented, (docs. 76 & 77). Crenshaw, 556 F.3d at 1290 (emphasis added). Since Hyde alleges that Bowman heard Hyde's gun clacking from the hallway[2] during the drug raid after officers announced their presence, Bowman had probable cause

---

[1] (See, e.g., doc. 81, p. 1 (asserting that officers were "not in line of fire – no shots fired, from another room"); id. p. 2 ("Bowman shot Hyde from living room – never in danger!"); id. ("Hyde never budged or attempted escape."); id., p. 3 ("No[ ] self defense, no shots fired[.] No need for that type of [d]eadly force."); id. ("Bowman shot Hyde . . . not even facing him (sideshot)"); id., p. 4 ("Bowman was not in danger.").)

[2] Hyde alleges in his objections, for the first time, that Bowman's hearing was "impaired" when Hyde manipulated the gun and made a clacking noise because Bowman was wearing a mask and helmet. (See,

to believe that his life and the lives of other officers was in danger when he shot Hyde.[3]  Garner, 471 U.S. at 11-12.  Additionally, as the Magistrate Judge explained, Bowman did not need to wait until Hyde pointed or fired his gun at an officer before using deadly force.  (Doc. 78, pp. 7-8; see also Powell v. Snook, 25 F.4th 912, 922 (11th Cir. 2022) (quoting Jean-Baptiste v. Gutierrez, 627 F.3d 816, 821 (11th Cir. 2010) ("[W]hen a suspect's gun is 'available for ready use' — even when the suspect has not 'drawn his gun' — an officer is 'not required to wait and hope for the best[.]' ").)  Finally, the Court is unpersuaded by Hyde's terse assertion that "Bowman . . . has [a] duty to retreat [and] training for alternatives [sic]", (doc. 81, p. 3 (cleaned up)), given the Eleventh Circuit's clarification that "[t]he Fourth Amendment does not require officers to use the least intrusive or even less intrusive alternatives in search and seizure cases.  The only test is whether what the police officers actually did was reasonable." Menuel v. Atlanta, 25 F.3d 990, 996-97 (11th Cir. 1994) (quoting Plakas v. Drinski, 19 F.3d 1143, 1148-50 (7th Cir. 1994)); see also Garczynski v. Bradshaw, 573 F.3d 1158, 1167 (11th Cir. 2009) ("Our task is not to evaluate what

---

e.g., doc. 81, p. 3 "[Bowman] heard noises (impaired) by mask/helmet"); id. p. 2 ("Bowman only 'heard sounds like' with hearing impaired (mask & helmet) [sic]." (emphasis in original); but see doc. 76, p. 3 (Bowman alleges in his Amended Complaint that "Bowman also 'admitted to hearing' Hyde show officers doesn't shoot. . . . Hearing a gun clack knowing what that sound was." (emphasis in original).)  Hyde does not identify, and the Court cannot discern, a meaningful distinction between "hear[ing]" and "hear[ing] [what] sounds like" the clack of a gun.  (See generally doc. 81.)

[3]  The Magistrate Judge cited persuasive authority bolstering the conclusion that Bowman had probable cause to fear for his safety and the safety of other officers.  (See doc. 78, pp. 8-9 n. 4 (citing Howe v. City of Enterprise, 2018 WL 8545947, at *24, 26 (M.D. Ala. Sept. 17, 2018) (Plaintiff fails to state an excessive force claim by alleging that an officer shot him when the officer knew that a domestic disturbance was committed in a home, the plaintiff answered the door with a gun, and the plaintiff "immediately turned to retreat back into the house"); Martinez v. Halabi, 2012 WL 222069, at *4 (S.D. Fla. Jan. 25, 2012) (granting officers' summary judgment motion regarding excessive force claim when there was no dispute that that officers shot a suspect after knowing the suspect was armed in a warehouse, officers had reason to believe the suspect was dangerous, and the suspect "move[d] his hands in the direction of where his weapon was located" after officers entered the room and announced their presence); Ermini v. Scott, 249 F. Supp. 3d 1253, 1269-70 (M.D. Fla. 2017) (granting officers' summary judgment motion regarding excessive force claim when "[i]t is undisputed that [the suspect] told the officers she had a gun, told the deputies to leave the house, and had gotten out of bed and advanced towards the bedroom door where the deputies were standing" before an officer shot her)).)

the officers could or should have done in hindsight. The sole inquiry is whether the officer's actions, as taken, were objectively reasonable under all the circumstances."). Accordingly, Hyde's allegations indicate that Bowman had probable cause to believe that the officers' lives were at risk when he shot Hyde.

Hyde also argues that Bowman acted unreasonably because Hyde did not receive a warning before the shooting.[4] As discussed, courts analyzing the reasonableness of the use of deadly force consider, *inter alia*, "whether the officer who used deadly force . . . had given some warning about the possible use of deadly force, *if feasible*." Garner, 471 U.S. at 11-12 (emphasis added). The Eleventh Circuit has clarified that "[w]hen considering whether it was feasible for a police officer to warn a suspect that she plans to use deadly force, [courts must] consider both time and opportunity." Cantu v. Dothan, 974 F.3d 1217, 1231 (11th Cir. 2020); see also Cook v. Cobb Cnty., Georgia, 2022 WL 3758235, at *6 (N.D. Ga. Aug. 29, 2022) (quoting Powell, 25 F.4th at 922 ("Significantly, the Eleventh Circuit has 'declined to fashion an inflexible rule that, in order to avoid civil liability, an officer must always warn his suspect before firing—particularly where such a warning might easily have cost the officer his life.' "). The Magistrate Judge concluded that, based on Hyde's allegations, "the hesitation involved in giving a warning" after Bowman heard Hyde's gun "clack" in the hallway during the raid "could readily cause such a warning to be his last." (Doc. 78, pp. 10-11 (quoting Carr v. Tatangelo, 338 F.3d 1259, 1269 n.19 (11th Cir. 2003)).)

---

[4] (See, e.g., doc. 81, p. 2 ("Since day 1, Hyde has shown Bowman snuck up [without] warning of deadly force, very feasible from living room – where other officers commended Hyde Compliantly!") (cleaned up) (emphasis in original); id., p. 3 ("Bowman shot Hyde [without] warning – and shot Hyde not even facing him (sideshot)") (emphasis in original); id., p. 5 ("No communication or contact [with] officers before shot!").)

Hyde objects to this finding, arguing that it was feasible for Bowman to warn him about the possibility that Bowman would use deadly force:

> Bowman had time to tell officers of gun (sound) and had time to aim around corner of hallway [and] living room . . . That's a reasonable amount of time to warn! . . . Officers were giving Hyde commands from living [room].  Bowman could have given Hyde command from living [room].

(Doc. 81, pp. 3-4 (cleaned up) (emphasis in original).)[5]   The fact that Bowman had sufficient time to aim his gun at Hyde does not suggest that he had sufficient time to provide a warning after hearing Hyde manipulate his gun.  Additionally, the fact that officers "[gave] Hyde commands from [the] living [room]" after the shooting, (id., p. 4), merely indicates that Hyde would have been able to hear a warning had Bowman provided one; it does not suggest that Bowman had the "time and opportunity" to provide one during the tense drug raid described in Hyde's Amended Complaint, as supplemented.   Cantu, 974 F.3d at 1231.[6]

Hyde also argues that this case is analogous to Mercado v. Orlando, 407 F.3d 1152 (11th

---

[5]  To the extent Hyde's assertion that Bowman "had time to tell officers of gun (sound)" is an allegation that Bowman told officers about Hyde's gun "clacking" before the shooting, that allegation contradicts multiple allegations in the Amended Complaint, as supplemented.   (See, e.g., doc. 76, p. 6 ("[N]o one said nothing before Bowman shot."); doc. 77, p. 5 ("Hyde was waiting for the officers to say something — complete silence when Hyde was shot!") (cleaned up) (emphasis added); see also doc. 74, p. 7 (explaining to Hyde that violations of Fed. R. Civ. P. 11(b) can result in dismissal).)   The Court, however, charitably construes the statement as a statement that Bowman *had sufficient time* to notify the other officers about Hyde's gun "clacking", and did not do so.   Similarly, the Court charitably construes Hyde's assertion that "[o]fficers were giving [him] commands from living [room]", (doc, 81, p. 4), as a statement that officers gave him commands during his post-shooting arrest, which is consistent with the allegations in his Amended Complaint, as supplemented.   (See, e.g., doc. 77, p. 5 (Hyde alleges that he "compliantly [did] exactly as [he was] told" during the post-shooting arrest).)

[6]  Hyde also attempts to distinguish this case from cases cited by the Magistrate Judge, which he asserts "all involve contact and warnings by officers" prior to their use of deadly force.   (Doc. 81, p. 2; see also id., p. 5 ("All citations for binding circumstances have missing component – no communication or contact [with] officers before shot!" (cleaned up).)   However, the Magistrate Judge cited multiple courts, discussed above, finding that officers' use of deadly force was objectively reasonable in similar circumstances without warnings.   (See, e.g., doc. 78, pp. 8-9 n.4 (citing Howe, 2018 WL 8545947, at *11, 22 (Plaintiff fails to state an excessive force claim despite alleging that an officer shot him "without giving [him] any warning before[hand]"); Ermini, 249 F. Supp. 3d at 1262 ("Deputy Hamer feared for his life, as well as the lives of the other deputies, and fired seven rounds through the door at plaintiff, never speaking before he shot.").)

Cir. 2005), which he accurately characterizes as a case where an officer's use of deadly force was unreasonable when an "armed suspect made no aggressive moves before gettin[g] shot[.]" (Doc. 81, pp. 2-3.) In Mercado, however, officers responded to a report of an attempted suicide, and found the plaintiff on his kitchen floor with a telephone cord wrapped around his neck and a knife pointed toward his heart. 407 F.3d at 1154. The Eleventh Circuit held that an officer "violated [the plaintiff's] Fourth Amendment rights when he intentionally aimed at and shot [the plaintiff] in the head" with a Sage Launcher[7] from approximately six feet away, since the plaintiff "was not committing a crime, resisting arrest, or posing an immediate threat to the officers at the time he was shot in the head." Id. at 1157-60. Here, even though Hyde alleges that he did not intend to threaten officers, and that the gun "clack[ing]" noise resulted from "showing officers [the] gun doesn't shoot", (doc. 76, p. 3), Bowman was objectively reasonable to fear for officers' safety given his knowledge that Hyde was manipulating a gun, a weapon with a greater range than a knife, after they announced their presence.

Finally, although the last three pages of Hyde's objections are unclear, he appears to contend that the Court should credit his allegations regarding the shooting, which contradict Bowman's trial testimony.[8] For the purposes of the screening of Hyde's claims pursuant to 28 U.S.C. § 1915A, the Court applies the standard of Federal Rule of Civil Procedure 12(b)(6). Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1278-79 (11th Cir. 2001). The Court must therefore take

---

[7] A Sage Launcher is a " 'less lethal' munition . . . designed to be used to protect persons from self-inflicted injury[.] . . . The projectile is not designed to penetrate the body, but only to leave bruises." Mercado, 407 F.3d at 1155.

[8] (See, e.g., doc. 81, p. 4 ("Hyde still represents truth and was shot (undisputed) by Bowman who lied on stand! Common sense, Bowman justifies shooting Hyde by his trial testimony (quote) Hyde was pointing a gun at Bowman's head squeezing a trigger!" (cleaned up) (emphasis in original)); id., p. 5 ("Why does Court hold Hyde to higher standard? When Hyde told truth and it's apparent Bowman lied on stand under oath! It's simple . . . the evidence was withheld because it shows Hyde was shot with his back toward Bowman.").)

8

all of Hyde's allegations in his Amended Complaint, as supplemented, as true, and construe them in the light most favorable to him.  Bumpus v. Watts, 448 F. App'x 3, 4 n.1 (11th Cir. 2011).   For the reasons discussed above and in the Report and Recommendation, Hyde's allegations are insufficient to state an excessive force claim, regardless of the accuracy of Bowman's account of the shooting.

## CONCLUSION

For the foregoing reasons, the Court agrees with the Magistrate Judge's conclusion that Hyde's Amended Complaint, as supplemented, (docs. 76 & 77), fails to state any § 1983 claim upon which relief can be granted.   Therefore, the November 28, 2022 R&R is **ADOPTED** as the opinion of the Court, (doc. 78), Hyde's objections are **OVERRULED**, (doc. 81), and all of his claims are **DISMISSED**.   The Clerk of Court is **DIRECTED** to **CLOSE** this case.

**SO ORDERED**, this 6th day of January, 2023.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA